Thanks for sticking around. Appreciate it. And we welcome Judge Randy Smith to the panel to hear a related case. This time we'll hear Center for Food Safety v. Vilsack, No. 12-15052. Good afternoon, Your Honors, and may it please the Court. George Kimball on behalf of Plaintiff Appellants. I'd like to reserve three minutes for rebuttal. We are here on behalf of nonprofits that protect endangered species, as well as over 75,000 conventional and organic farmers from across the country, several of which are here with us today, all the way from Idaho and South Dakota, respectively, because of the impacts of Roundup Ready alfalfa's unrestricted approval. Now, these impacts are substantial. We're talking about acknowledged harm to dozens of protected species, as well as potentially hundreds of millions of dollars in lost farmer costs, sales, and markets. The touchstone of this appeal is AFIS's existing discretion. The Plant Protection Act's plain language gives AFIS the discretion to address these harms. The Supreme Court in the Monsanto decision said they could, and the agency said they could right up until their litigation position in this case. After the first-ever environmental impact statement on any genetically engineered crop showed the agency could no longer argue these harms were unlikely, and that they would have to consider restrictions, which they included in that EIS, they then threw a legal Hail Mary. Our hands are tied. Sorry. We can do nothing but fully approve. Now, we do not challenge AFIS's exercise of discretion, because they refuse to acknowledge their discretion. Affirming their disavow of any meaningful oversight would make all three statutes here into nullities. NEPA would become a meaningless paper exercise, which the agency could ignore, as it has here, despite its fundamental purpose to guide agency decision-making. The Endangered Species Act, the heart of it, its consultation mandates, which Congress commanded should have priority for endangered species, could be ignored. And the Plant Protection Act, whose purpose is to protect not just agriculture, but the environment and the economy, would no longer apply to the true harms of Roundup Ready alfalfa or similar herbicide-resistant crop systems like it, which would be essentially unregulated. I think your argument probably answered the question I'm going to ask, but I want to make sure I understand your position. It struck me that the basic argument in this case is whether it's discretion or you're mandatory, and everything else falls from that, including the NEPA analysis, Endangered Species Act, et cetera. Is that your position? In other words, are the other claims somewhat derivative of your central argument? Yes. I think the claims are all interconnected and that the lower court made two basic errors that permeated its examination of all three statutes. So if the case really rises or falls on the primary question that you've just outlined for us, correct? Yes, Judge Thomas. Okay. Those two basic errors that I mentioned. First, the district court repeatedly replied the wrong standard to every question, asking, concluding that APHIS was not required to apply its broader noxious weed authority or wasn't required to consider these harms under its plant pest authority, when the question was whether the agency had the discretion to do so, which it does. Second, the district court excused the agency from taking any responsibility for the indirect impacts of its actions, most notably the roundup that is going to be concomitant with Roundup Ready alfalfa's approval, despite the fact that both the Endangered Species Act and the Plant Protection Act require the inclusion of direct and indirect impacts. But as I understand it, let's just go to the Plant Protection Act. Let's just look at that first. If I look at the Plant Protection Act and I look at what the agency said under the Plant Protection Act, it seems to me you're agreeing that they have discretion in doing what they need to do in the Plant Protection Act. We agree they have discretion. The agency doesn't. Well, as I read the as I read what the agency did under the Plant Protection Act, they went a different way than what you may think they ought to have gone, but nonetheless they determined, using their discretion, that this does not violate the Plant Protection Act, didn't they? Judge Smith, if they had agreed in their discretion that they, under the Plant Protection Act, they would have had to consult under the Endangered Species Act. Their fundamental position is that they could do nothing but deregulate Roundup Ready alfalfa without restrictions. In the record of decision, they said every other alternative was off the table, and in front of Judge Conte below, their counsel said repeatedly, our hands are tied, our hands are tied. Well, it's easy to argue our hands are tied, our hands are tied. I guess I'm trying to figure out, if I look at their decision as they laid it out, they suggested a certain interpretation of the complex statutes and regulations that would violate the Plant Protection Act. Now, I realize that they have to couch that in the idea that if they make that determination and it's not discretionary so that they don't have to go do other things that you're suggesting they ought to do, but I guess I'm having a tough time understanding why their decision was not discretionary. They had to interpret the act. They had to go through and do what they did with their interpretation. And therefore, it seems to me that it's going to be a hard thing for our court to undo at least their decision as it relates to the Plant Protection Act. Well, I would say that your question goes to a couple of things. First, it's the unambiguous language of the statute here. We're dealing with very broad definitions of harm. Now, these harms aren't the same thing as traditional plant pest harms or traditional noxious weed harms, but that doesn't matter because these are terms of art. And Roundup Ready alfalfa's harms can meet those definitions. So I think the agency's convenient litigation position here is contrary to the plain language of the statute. I also think it's contrary to the Monsanto Court's decision, irreconcilably so. Now, when we were here before you last, we went to the Supreme Court. The Supreme Court ruled on a completely different ground, but one that was critical to this case. They said that the lower court had improperly kept APHIS from promulgating a partial deregulation specific with restrictions for transgenic contamination and weed-resistant development. Now, those are the very harms in this case that the district court said APHIS could not consider, had no authority to implement. So I think that decision should control here, that that is our position. The government didn't argue otherwise in Alfalfa I. It should be stopped from arguing it here. Okay. But let me make sure that I understand where we are with this discretion, because we have statutes winding around each other here. The agency says that the only plant that's subject to regulation is a parasitic plant, and this isn't a parasitic plant, and so, therefore, it can't do anything. And at least a part of your argument, as I understand it, is that they have to exercise discretion in interpreting the statute that way, and so, therefore, that triggers a duty to consult with other agencies under the Endangered Species Act and perhaps other statutes. Is that right? More or less? Yes. I think their argument is that it needs to be a parasitic plant. Unfortunately, that's contrary to 20 years of their own practice. But you disagree with that. Right. We disagree with that. Interpretation. But you also say that if that's their interpretation, then they're exercising discretion and they have to have other duties. They have to consult. Yes. If they have any discretion, they have to consult. Yes, Your Honor. So I think the agency's position here, here's what happened. In alfalfa 1, we made a PPA challenge as well as NEPA and the Endangered Species Act, and they had three findings that covered Roundup Ready alfalfa's harms very closely, harmed agricultural commodities, harm to endangered species, promoting weeds and crops. That claim was dismissed without prejudice when we prevailed on NEPA grounds. Now, in anticipation of this litigation, they just removed those findings. They just simply removed them. So I think the import of that is that their position here, now, in the record below, there was no analysis of whether these harms were plant pest harms or noxious weed harms. They simply didn't assess them or explain why they removed them from their alfalfa 1 assessment. Well, but before we get to noxious weed harms, it doesn't seem to me that that's really in front of us, is it? I mean, nobody's asked for that to be a noxious weed harm. Nobody's petitioned for it to be a noxious weed harm. All we have in front of us is the general presumption that because of what Roundup is, that it probably is a plant pest. I would say, Judge Smith, that we don't have to petition them. They act independently all the time, and we cite numerous examples in our briefing that the agency acts on noxious weed harms independently. Well, I guess I'm trying to figure out, reading the statutes pretty carefully, 1 in 340, 1 in 360, plant pests, if in fact Roundup is what it is, it can pretty well be classified as a plant pest or presumed such, and then I have to determine in reading the statute whether it really is or whether it isn't. But if I go to the noxious weed part of the particular statutory complex, there's no presumption one way or another. One has to petition to make that happen. Well, again, we cite numerous examples where they have acted independently. What I would say is that Congress consolidated previous statutes into the Plant Protection Act, indicating its intent that these harms be addressed together, not separately. The agency has failed to update its regulations to account for that. But as we know, regulations cannot be a – when it comes to discretion, cannot bind an agency. From Home Builders and otherwise, it's the statute that binds them. With the Court's permission, I'd like to turn to the Endangered Species Act now for the remaining of my time. Well, I think Judge Schroeder's question is pretty carefully drawn, and I guess I'm trying to make sure. If, in fact, this is a discretionary act, it seems that you win on the fact that they should have done something under the Endangered Species Act. At least go over and consult, right? Yes, Judge Smith. Isn't that the end of your argument, really? It can be if the Court wishes. Well, I'm not sure that they – I'm not sure because I'm trying to determine if there's something more you can say about that. You're really arguing they can't go where they've gone because they haven't consulted with the people they should have consulted with under the Endangered Species Act because it's discretionary. Isn't that your whole argument? Yes, Your Honor, and the may affect threshold was triggered. And you won't – but you're also disagreeing with their interpretation of the Plant Protection Act, aren't you? Or are you? Well, I think their litigation position here is contrary to the plain language as well as the Monsanto Court's decision, yes, and has no record basis. With that, I'll save the remainder of my time. Thank you. Very good. May it please the Court. I'm Dana Kerswong for the United States. I'll be speaking for 10 minutes, and I'd like to reserve the remaining 5 minutes for Mr. Bress. Plaintiffs confuse USDA's broad discretion to regulate plant pests with discretion to regulate things that the agency has determined are not plant pests. Now, in this case, because of the way that Roundup Ready alfalfa was made, using this agrobacterium that is a plant pest, APHIS takes the protective stance of assuming that it is a plant pest until the evidence shows otherwise. But once the evidence shows that it is not a plant pest, APHIS doesn't have the discretion. In terms of partial deregulation. But how do they determine that? That's the question. How do they determine that it isn't a plant pest? Is it a discretionary act that they make in determining that? Well, Your Honor, there is some discretion in assessing the particular factors. But under Home Builders, that isn't enough to trigger an endangered species analysis. Well, but there aren't any set factors in making that determination under the Plant Pest Act. Well, Your Honor, with the agency. There are statutes to look at and statutes to understand and statutes to put out there that say what it is and what it isn't. And the agency had to interpret those statutes in its discretion. Well, Your Honor, if we look at the statute here, what we're talking about is the kind of harm that is caused by one of these listed plant pests, right? In this case, we have agrobacterium. It makes plants sick. So the agency looks, does Roundup Ready alfalfa make plants sick? And the answer is no. It has no greater pathogenic properties than any other alfalfa. And plaintiffs aren't challenging that conclusion. As plaintiffs have conceded, what they're talking about here is not a traditional plant pest or noxious weed harm. They're asking for something that is different. And the agency has long interpreted its regulations to not include the four specific things that plaintiffs want the agency to look at, right? They've never looked at gene transfer. Gene transfer, this isn't something new. It happens in nature all the time. But the fact that plants can cross-pollinate, like rapeseed and canola oil can cross- pollinate, and when that happens, it ruins the value of your canola crop, because rapeseed is poisonous to humans and you can't use that crop to make canola oil anymore. But APHIS doesn't regulate rapeseed as a plant pest. That kind of cross-pollination harm is handled by State and local regulations and with growers' agreements. Then, additionally, they want to look at the harm from the herbicide. Again, APHIS has never looked at independent human action as a plant pest harm. The agency needs to do a — But it's a — you may say it's never looked at, but that doesn't mean maybe it shouldn't. The increased use of the herbicide is the result of the introduction of the bacterium that creates the Roundup Ready in the first place. So there is a causal connection. Your Honor, it's not the kind of causal connection that matters under the Endangered Species Act, under Home Builders, right? The herbicide is regulated by EPA. EPA has been involved in that. Before this herbicide could be used on Roundup Ready alfalfa in the way that concerns plaintiffs, they had — the — Monsanto had to get a label change for the herbicide to be used in that way. That was EPA's choice. EPA authorized that label change. Nobody challenged that label change. EPA is also currently in the process of reevaluating glyphosate, and it — that process is ongoing. It's — What you're saying is that no agency has jurisdiction to look at the kind of harm that we're talking about here. It seems the EPA is worried about one thing and APHIS is worried about another and nobody is looking at this. Is that really where we are? No, Your Honor. Respectfully, the EPA will look at the impact on endangered species, and it's already said that it intends to consult to the extent that's appropriate based on its endangered species analysis. Impact of what? The impact of the herbicide. Roundup. Roundup. The impact of the Roundup. But not the impact of the — of the altered alfalfa. Yes, Your Honor. Because the change to alfalfa does not have any endangered species effect on its own. Right? It's the herbicide that causes that problem. And in terms of the alfalfa, APHIS looked at whether alfalfa would cause any plant pest harm. And plaintiffs haven't challenged APHIS's determination that no, alfalfa has no pathogenic properties. It doesn't have — Right. But I think the question is, do you think the EPA has the authority to look at the precise question that's here, that is, the increased use of Roundup by virtue of the genetically altered Roundup-resistant alfalfa? Well, Your Honor, EPA authorized the label change, and nobody challenged that label change. You know, I don't think you're quite answering my question, though. The question is, does the EPA have the authority, in your view, to take this particular question or examine this particular problem? Your Honor, EPA has the authority to look at the harms that come from herbicides, absolutely. And in this case, they authorized the label change. But even if there's some gap in the statutory framework, that doesn't give APHIS more authority under the Plant Pest Act to regulate things that it has determined are not plant pests. Right? There's no plant pest harm that we are talking about. The agency needs to be consistent in its interpretation of its statute, and the agency has consistently, over 95, almost 100 of these petitions for non-regulated status, never looked at independent human action. And that has included other Roundup-ready crops that are used more widely than alfalfa, like corn and soybeans. Right? This is the agency's consistent practice. And that consistent practice, of course, can also limit the agency's discretion under the Endangered Species Act. But certainly, if we're talking about the plant pest authority, that's within the agency's discretion to make that kind of determination. Now, saying there are really four things that plaintiffs want considered that have never been considered. Right? One is this cross-pollination. One is independent human action. In terms of noxious weed, as Your Honor pointed out, that's really a red herring here. That's not an issue in this case. The agency's inaction doesn't trigger any Endangered Species Act requirements. But in any event, the agency has never considered a crop plant to be a noxious weed. Right? This is a small fraction of the problematic weeds that are so invasive, so harmful, that the agency determines that it wants to keep them out entirely. It's also never listed something as a noxious weed because of immunity to a particular herbicide. Right? That means you can't kill the plant with Roundup. But it doesn't mean that it rises to the level of a noxious weed. Other herbicides work. It's not so invasive, so harmful. Well, I guess I hear all of these ideas. And I hear that this has been, from your argument, the way the agency has gone for time immemorial. And therefore, they shouldn't have to consider all of this. However, I'm stuck with a statute which suggests that if APHIS has any discretion in making its decision as to the Plant Pest Act, then at that point, that discretionary decision ought to be given over to a couple other agencies to look at. So I guess I'm, again, back to my own question. Even if, even if everything you say is correct, it seems like what the agency does under the Plant Pest Act is not statutory, follow the factors. It's read the statute, see if it applies. It's all a discretionary decision. So how do they get out of going over to the EPA and finding out what they want to say about it if it's discretionary? Your Honor, the EPA has been involved, right? They commented on it. The EPA has been involved. But they didn't get involved as they should have been involved, as the plaintiffs suggest. Nobody is suggesting that. Well, EPA has been involved. Plaintiffs, I think, are talking about consultation with the FWS, the Fish and Wildlife Service. I understand that. But the discretion to interpret the specific factors is not the same, as the Supreme Court said in Homebuilders, with discretion to consider listed species. And while APHIS has discretion, limited discretion, to figure out what is a plant pest, that is not the same as discretion to consider something that is not a plant pest. With the permission of the Court, I would like to reserve the remainder of the time for Mr. Bress. Thank you. Your Honors, if I might start with Judge Smith's question. And I'll agree with the government on this. There really are two different types of discretion. And I think it's really important at the outset to understand which type Homebuilders is talking about and which type it isn't. There's one type of discretion when you are looking at a statute as an agency and trying to interpret what it means, as we know that that's governed by Chevron. We think, by the way, this is a Chevron Step 1 case as to whether RRA is a plant  And we don't believe that there is any discretion, indeed. And I think the agency doesn't believe that there's any discretion for them to call it a plant pest when it isn't one. In other words, statutory language can only be stretched so far, Judge Smith. And here you've got statutory language that lists the different types of living things that can be plant pests and talks about that harm or damage plants. The agency quite rightly in figuring Why would we have to defer if there's no discretion? All right. Your Honor, let me address that. First of all, I think the right answer is that the agency had no discretion to call this a plant pest because under the statute it isn't one. Well, I guess there are two things. Let me make sure I understand your argument. The first argument is, look, forget any agency action. Look at the statute. It's not a plant pest. End of story. Right? That's Chevron 1. If it's not a plant pest, it can't be regulated as one.  But the agency went beyond that in this case. What do we make of that? All right. Your Honor, I think that the agency only went beyond – well, first of all, I don't – let me start here. I don't think they went beyond it because I think they read the statute and concluded it's not a plant pest. Now, the fact that the agency did that and concluded it's not a plant pest is simply what they were supposed to do, interpret the statute, look at what's before them and see whether it is or isn't one. And here, I mean, the types of things that are plant pests are gypsy moths, you know, Japanese beetles, et cetera. This just isn't the kind of thing Congress was remotely talking about. No, but I think the question is that if we conclude that there's an ambiguity in the statute that required interpretation by the agency and it exercised its discretion and took factors in applying the statute to this particular plant, is that the kind of discretion? I'd like to address that. I know. I'm trying to – let me finish my question. I'll give you time. Don't worry. Is that the kind of the exercise of discretion that triggers duties under the endangered species act? And tell me why you think that is. The answer is no, Your Honor, and I think we can go to Home Builders for that as well as a couple of this Court's cases. But let me start with Home Builders. Home Builders had nine statutory factors that had to be looked at to see whether the permitting authority would be sent to the State of Arizona. The Supreme Court allowed that there was some play in the joints as to whether those nine statutory factors were met. And there was, in other words, some discretion on behalf of the agency in that case to interpret those nine factors. Perhaps they could have interpreted them differently in a way that those factors weren't met and, therefore, they wouldn't have sent the permitting authority over. But the Court found that the Endangered Species Act doesn't require the agency when it's interpreting other statutory factors to interpret them in a way that most favors enforcement under the Endangered Species Act. Instead, the Court says interpret this other statute the best you, you know, the best you can. If you fall within allowable interpretation, if under that interpretation you can't do what the plaintiffs would like you to do under the Endangered Species Act, then there is no Endangered Species Act duty. The same was true in the water ---- I always mispronounce it, the Matejko case here, where BLM had certain rules, not rules, an agreement for logging road. It had certain requirements that would be met for that logging road to go through. Those rules included, was it the shortest possible path? Would it interfere with BLM operations? Those sorts of things. The Court held that those factors had nothing to do with endangered species. And so BLM didn't have to interpret these other factors in a way to try to deny the right to build this road. Instead, BLM was supposed to apply its factors, and if under those factors it had to allow the road to be built, then there was no discretion. Similarly, as in homebuilders, when it applied the factors and applying the statutory factors said, we've got to give the permitting authority to Arizona, that was the end of the SA case. The same is true here. The Plant Protection Act. Under the Plant Protection Act, RRA is not a plant pest, not even remotely close to a plant pest, and isn't under the agency's precedent as well. There was no departure here. The agency has never called a crop a plant pest. And insofar as the two types of harm that plaintiffs claim should make it a plant pest, one of them is cross-pollination. If cross-pollination was a plant pest, then all crops would be plant pests. Popcorn would be a plant pest because it can cross-pollinate next in the field next to it with sweet corn. If the use of herbicides made by man made a crop a plant pest, which of course is mixing apples and oranges anyways because an herbicide is not a living stage or anything of that sort, but if that were a plant pest, herbicides are used on crops throughout the nation and perhaps could harm plants, animals, species, et cetera. But that doesn't make crops across the nation a plant pest just because herbicides are almost always used on crops. So the agency got that one right. And in getting that one right, it lacked the discretion. But I'd like to address, and I know I'm going a bit over time. Roberts, I'm sorry. We'll give your opponent equal time, so go ahead. Thanks. I appreciate it. I'll slow down. Give him a couple of minutes. Judge Schroeder, you asked, and I think the question was repeated, whether this meant that EPA lacks jurisdiction. And I think that's an important question to ask. The answer is no. EPA actually has complete jurisdiction over how glyphosate is used. And it has far more nuanced authority to regulate that than APHIS possibly could. So if RRA use increases the amount of glyphosate that is used out there, EPA has the authority to look at that and say, is that a problem? Do we need to add to the label or to the rules new rules restricting, for instance, the concentration of the glyphosate that is used, the number of times that it can be used on a crop, the geographic areas in which it can be used? It has the tools and uses them frequently at a State level to determine where are endangered species and do we have to restrict the use of this particular herbicide because of that. APHIS, on the other hand, is a very blunt tool and the wrong tool to use for that sort of thing. APHIS has a go-no-go decision on can you plant the crop once it's, you know, it depends whether it's a plant pest or not. But it has no ability to get into it and say, well, how much herbicide are you going to use, what's your concentration, all those sorts of things. Those are EPA questions. They're not really questions for APHIS. The noxious weed authority, it isn't before the Court because contrary to how plaintiffs want to view this, the agency action here was purely deregulation as a plant pest. We can't use the term deregulation as just sort of a general vague term. They took a specific agency action, as the term agency action is used, which is a very specific way in the statute. That action was deregulation as a plant pest. They weren't required at the same time to go ahead and say what other tools do we have in our bag that might allow us to stop RRA from being grown, such as looking at whether it's a noxious weed. Once again, Home Builders helps us with this. In Home Builders, the argument was made that the Federal Government made a separate and distinct decision to fund the State of Arizona's permitting practices. And the Supreme Court said that's a separate action. That's not part of this litigation. And they weren't willing to sort of say an agency has to go into the tool bag. If the tool bag theory were right, then an agency faced with a Clean Water Act complaint with regard to a particular industrial plant, so long as they couldn't use the Clean Water Act because the plant was in compliance, would have to think, well, could we shut this plant down some other way, maybe use our Clean Air Act authority. What's that? Time to sum up. Okay. Thank you, Your Honor. In sum, the agency lacked discretion to treat RRA as a plant pest because, A, it isn't one, and, B, under Chevron deference, the agency would get that kind of deference to determine whether it is or isn't one. Having applied its analysis, coming to the conclusion it's not a plant pest, so long as this Court can't and won't overturn that because it's correct, there is no power in the agency any longer to comply with the ESA. Thank you, Your Honor. Thank you. Thank you. We add five minutes to his available time. Thank you, Judge Thomas. I'd like to start where my opposing counsel left off with regards to homebuilders. I think homebuilders is an opposite here. In that case, we had an exclusive list of criteria and a shall-approved language in the statute. Here, as we've discussed, there's no list of criteria, and APHIS has vacillated the criteria on which it uses, which, as in Karuk Tribe, is indicative of discretion. So if you just to make sure that I have the analytical lines clear, if this is a Chevron step one issue, that is, that is pure statutory interpretation, and we say, well, we look at the statute, it's not a plant pest, then probably the inquiry for this whole case stops there. True? I don't think that it is a Chevron case. I'm not suggesting we've decided, you know, we haven't talked about it, we haven't decided one way or another. I'm just saying analytically I want to make sure I understand how you follow through. If it truly is Chevron one, matter of statutory interpretation, no agency discretion necessary, then that the case stops there. You'd agree with that? If they don't have discretion, then they don't have to consult. Okay. Yes, but I think they plainly do have discretion, both in the face of the statute and the Monsanto court decision, as we've discussed. In fact, they routinely considered harm to threatened and endangered species in the past in their deregulation decisions. We list, including in alfalfa one, we list a number of times that they have on page 54 of our opening brief. I think this is much more like both Washington Toxics and NWFE-NFTS, where you have two different statutes with different but complementary purposes that can coexist together. So the argument that's been made that broader statutory authority of noxious weed is off the table, that the agency can confine itself by its regulations, would be an unprecedented extension of home builders. There is no case that holds that. It would allow agencies to limit themselves out of consultation duties by narrowly drawing their regulations, or, as in here, just simply delaying updating their regulations, because that's what we have. The Part 340 regulations have not been updated to show APHSA's new, broader Plant Protection Act authority. The only word we have about it is the proposed 2008 regulations, in which the agency says, well, we can apply the noxious weed authority. We need to. And the new regulations are going to, quote, make that clear. So they do have the discretion to apply that broader authority here. And that requires consultation. Now, with regards to EPA, if EPA's FIFRA registration of an herbicide could shield an agency from any potential pesticide impacts of their own actions, agencies could approve pesticide applications with impunity. And that's just simply not the law. There's nothing in FIFRA that says that. We cite a number of cases, Rogers and Wild Fish, in which agencies do have to consult on the pesticide impacts of their actions. Washington Toxics, again, holds that that doesn't shield them. Well, but what is your response to the argument that the effects of this herbicide are in the jurisdiction of the EPA and that APHSA shouldn't have anything to do with it? Well, I think that APHSA is responsible for the effects of its own action, both direct and indirect and interrelated under the Endangered Species Act. And this crop system is like a lock and a key, like a car without gas. The seed and the herbicide are sold and marketed together as one crop system. That's how Monsanto markets it. Nobody buys Roundup-ready alfalfa, as the name shows, unless they are going to spray it with Roundup. The way that it's different than conventional crops is that it has a plant pest engineered in every single cell that makes it resistant to Roundup. Right now, alfalfa growers don't much spray Roundup because it will kill their alfalfa. The record shows here it's going to increase Roundup use on alfalfa 25 million pounds a year. So the question is, can you, laying aside the issue that's involved here, do you believe that you can raise this issue, the increased use of Roundup, before the EPA? Well, EPA is not deciding whether or not even to consult on their re-registration. I understand that, but I'm just going to go ahead. Well, it would be a post-mortem, Your Honor, and that's not the Endangered Species Act's purpose. It's supposed to address before the harm occurs. There's going to be many seasons between now and then. So your answer is yes, but it's later? I don't know if we could or not. We honestly didn't even look into it. This is so closely related to APHIS's action, and this has been an ongoing case for many years now. I think the ruby pipeline case that we sent a letter on yesterday talks to this, too. It says the agency can't rely on another agency's non-ESA measures for mitigation. It says they have to be ESA measures to protect species. So APHIS's reliance here on EPA was improper. And EPA told them as much. At ER 186, they say to them, point blank, don't rely on us. You're making an erroneous assumption. With regards to going back to the Plant Protection Act for a second, I think that the question of whether this is a plant pest or not is it's in every cell. The plant pest is in every cell of the crop. What the agency is really doing is to see whether that creates risks. Now, my opposition kept talking about disease. But if you look at the definition of what a plant pest risk can be at 7 U.S.C. 701, subsection 14, it doesn't just say disease. It says directly or indirectly injure, cause damage to, or cause disease in any plant or plant product. So if you just interpret it as disease, you are reading out injure and damage from that language. It's very clear it can encompass, and Congress wouldn't put terms in and make them superfluous. It's very clear it can be more than just disease. With regards to the claim that this is the same as cross-pollination as in regular crops, no, it's not. I mean, these crops are genetically engineered. They go through review under the Plant Protection Act. As I started with, this approval, if these harms are not at least considered by the agency and potentially restricted, is going to cost millions of dollars in export harm. It's going to cost the loss of natural and public varieties that my clients grow. So this is very different than popcorn seed. This is transgenic contamination. Moreover, the Monsanto court foreclosed that argument. They said transgenic contamination is a harm APHIS can regulate. They can partially restrict for it. And to that question, how could APHIS act to protect endangered species here, they could do exactly that. They could partially deregulate this crop with limits. And if they stop where the crop is, they're going to protect the species. Now, that ---- Is your argument that APHIS did not take a look at the environmental impacts of full and partial deregulation? Thank you, Judge Smith. Is that your argument? I haven't said a word about NEPA yet. I appreciate that. Our argument is that essentially ---- Oh, I ---- nobody said anything about that on either side. So I thought we better get something about it pretty quick. I appreciate it. I read the ROD, and I'm even getting into all these big deals now using the terms ROD. I read the ROD, and I frankly by reading it, I saw time and time again where it looked at all. It looked at partial deregulation, gave many, many, many reasons. Well, many, many is overdone. Many reasons why they weren't going to go for partial deregulation. So how can I say that they didn't give a hard look at that? Well, I think the key is that they said that they couldn't choose ---- they could only ---- that the partial deregulation alternative was beyond their regulatory authority. Well, you say that, but if I look at the ROD itself and I look at all the things they say about it, it seems to me that they took that all into consideration whether they had that to decide or not. I mean, it's right there in the ROD. Why? Well, in the final environmental impact statement, they certainly thought it was lawful then. They certainly said it was not just lawful but a preferred alternative, and it met the agency's purpose and need. And then 30 days later, they turned around and said, well, sorry, we actually can't do that. So I think they violated NEPA as a matter of law because they didn't really consider this alternative, and I think the record of decision needs to be redone and actually use the NEPA analysis, the way it's meant to be used, to guide agency decision-making. I would say in closing, Your Honors, there are really two visions here of these statutes. There is the convenient litigation position that will make all three of these statutes into nullities, which the government and my opponents are putting forth, that would make Ronda Brede Alfalfa unregulated and these harms not to be considered or overseen. Or there is the view that they have the discretion under the statute to consider these harms. Now, that's the Supreme Court's view in Monsanto. That's every other court, Alfalfa 1, Sugar Beets 1, that ordered these harms to be analyzed under NEPA because they were cognizable. If they didn't have authority over them, they wouldn't have to analyze them. That's the plain language of the statute that's very broad and says they can't analyze these harms. And it used to be APHIS's view right up until this litigation position, and that's our position. On de novo review, we ask you reverse and remand with instructions to enter summary judgment in our favor on all three statutes and evocator of the deregulation. Thank you. Thank you, counsel. Thank you all for your arguments and for your briefing. That's excellent. And we will be in recess. All rise.
judges: Schroeder, Thomas, Smith